UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Tracy D.G. J.,[1]

    Plaintiff,

v.

Frank Bisignano, *Commissioner of Social Security*,

    Defendant.

Case No. 24-cv-2793 (SGE)

**ORDER**

---

This matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rule 7.2(a)(1). Plaintiff Tracy D.G. J. ("Ms. J") seeks judicial review of the decision of the Commissioner of Social Security denying her request for Social Security Disability Insurance and Supplemental Security Income. The Court has jurisdiction over Ms. J's claims under 42 U.S.C. § 405(g).

Pursuant to the Federal Supplemental Rules of Civil Procedure which govern an action seeking judicial review of a decision of the Commissioner, this action should be "presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Ms. J filed a brief requesting reversal of the Commissioner's final decision and remand to the Social Security Administration for further administrative proceedings. (Pl. Mem., Dkt. 18; Pl.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff, it is by his or her first name and last initial only.

1

Reply, Dkt. 24.)² The Commissioner filed a brief asking this Court to affirm the underlying decision. (Def. Mem., Dkt. 20.)

For the reasons set forth below, Ms. J's request is **GRANTED**, the Commissioner's request is **DENIED**, and this matter is **REMANDED** for further proceedings consistent with this order.

## BACKGROUND

### I. Procedure

The Social Security regulations set forth a five-step sequential method of evaluating disability claims. 20 C.F.R. §§ 404.1520(a), 416.920(a). The first step is to determine whether the claimant engages in substantial gainful activity. At the second step, the ALJ determines whether the claimant suffers from a severe impairment—i.e., an impairment that significantly limits the ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claim is denied. If so, at the third step, the ALJ determines whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment meets or equals a listed impairment, then the claim will be granted. If not, at the fourth step, the ALJ determines whether the claimant has an impairment which precludes the performance of past relevant work. 20 C.F.R. §§

---

² Ms. J also filed a Motion for Summary Judgment seeking judgment in her favor. (Dkt. 17.) The Federal Supplemental Rules of Civil Procedure, however, no longer allow for a motion for summary judgment in an action seeking judicial review of a decision of the Commissioner of Social Security. *See* Fed. R. Civ. P. SS Rule 5. Accordingly, the Motion for Summary Judgment (Dkt. 17) is stricken as filed in error.

404.1520(e), 416.920(e). This includes determining the claimant's Residual Functional Capacity ("RFC"), which is the claimant's ability to do physical and mental work on a sustained basis despite limitations from any impairments. If the claimant's impairments do not preclude performance of past relevant work, then the claim will be denied. If the claimant's impairments do preclude performance of past relevant work, then at the fifth step, the ALJ determines whether the claimant's impairments prevent the performance of any other work, considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Ms. J applied for Social Security Disability Insurance under Title II of the Social Security Act on December 2, 2021, and for Supplemental Security Income on December 8, 2021. (R. 964.) The initial applications were denied, as was the request for reconsideration. (R. 1065-74; 1085-99.) A video hearing was held before ALJ Mary D. Morrow on March 2, 2023, and the ALJ issued a determination that Ms. J was not disabled on March 22, 2023. (R. 964-83.) Ms. J asked the Appeals Council to review the ALJ's decision, and the Appeals Council found no reason to change the decision. (R. 1-7.) Ms. J filed the Complaint in this matter on July 19, 2024. (Dkt. 1.)

**II.      Legal Standard**

Federal courts will uphold the Commissioner's denial of a disability claim if substantial evidence supports the ALJ's findings and if the decision is not based on legal error. *See Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "Legal error may be an error of procedure, the use of erroneous

legal standards, or an incorrect application of the law." *Collins*, 648 F.3d at 871 (citations omitted).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). A court determining whether evidence is substantial must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The substantial-evidence standard is deferential, and courts should not reverse the Commissioner's findings simply because evidence may exist in the administrative record that would support a different conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Instead, a court should reverse only when the ALJ's decision is outside the reasonable "zone of choice" created by the evidentiary record. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). Therefore, the law requires that this Court review the ALJ's factual determinations with deference, neither re-weighing the evidence nor reviewing the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

### III. ALJ's Decision

The ALJ began her analysis by determining that Ms. J remained insured through September 30, 2023, and had not engaged in substantial gainful activity since her alleged disability onset date. (R. 967.) The ALJ next determined that Ms. J had the following severe impairments: "protein S deficiency; cardiac arrest; small PFO and status-post PFO closure; migraines; leiomyoma; chronic pain syndrome; major depressive disorder; anxiety; social anxiety disorder; panic disorder; symptoms of an eating disorder; and alcohol use disorder (remission)." (R. 967.) At step three, the ALJ determined that Ms. J's impairments did not meet or medically equal the criteria of any Listing described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 968-71.)

At step four, the ALJ determined that Ms. J had the RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> Frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds. The individual can work in an environment with no more than a moderate noise level as defined by The Selected Characteristics of Occupations. The individual can never work under strobe or flashing lights; and can never be exposed to hazards such as moving machinery or unprotected heights. The individual can make simple, work-related decisions and perform simple, routine, and repetitive tasks, but not at a production-rate pace (so, for example, no assembly line work). The Individual can respond appropriately to occasional interaction with supervisors, co-workers, and the general public; and can tolerate few changes in the work setting, defined as routine job duties that remain static and were performed in a stable, predictable work environment. Due to visual disturbances, the individual would be unable to sustain sufficient concentration, persistence, and pace such that the individual would be off task 15% of the workday.

(R. 971-72.) Using this RFC, the ALJ determined that Ms. J was incapable of performing past relevant work. (R. 980.)

5

At step five, the ALJ determined that Ms. J could still perform other jobs that exist in significant numbers in the national economy. (R. 981.) In making this determination, the ALJ relied on the testimony of vocational expert ("VE") Frank Samlaska. (R. 981-82; 1010-15.) The ALJ noted that the hypothetical she asked the VE at the hearing was "different than that posed in the claimant's [RFC]." (R. 982.) At the hearing, the ALJ asked the VE whether jobs existed in the national economy for a hypothetical individual with the above RFC except that rather than being off task 15% of the workday, the individual would be off task "at least 20% of the workday." (R. 982, 1013.) The ALJ's decision noted that the VE testified there would be no jobs available in the national economy for an individual who would be off task at least 20% of the workday. (R. 982.) However, the ALJ noted that the VE testified that jobs he listed "could be performed if off-task behavior was lower than 20%." (R. 982.) She continued, "The [VE] testified that the allowable off-task behavior for cleaning occupations was right up to 20% and for conveyor belt/factory settings it ranged between 8-10%." (R. 982.) The ALJ found that Ms. J could perform three jobs that the VE had identified—a housekeeper, an order caller, and a collator operator—all of which totaled approximately 221,439 jobs in the national economy. (R. 981-82.) Based on this finding, the ALJ concluded that Ms. J was capable of working jobs that existed in significant numbers in the national economy and therefore was not disabled. (R. 983.)

## **ANALYSIS**

Ms. J argues that the ALJ's decision is not supported by substantial evidence and is contrary to law. Specifically, she argues that (1) the ALJ's post-hearing change to the off-

duty limitation in her RFC determination is not supported by substantial evidence, and (2) the ALJ committed legal error by failing to evaluate whether Ms. J met Listing 5.08.

## I. ALJ's Off-Duty Limitation Not Supported by Substantial Evidence

Ms. J argues that the ALJ failed to provide evidentiary support or explanation why the limitation posed in the hypothetical question to the VE at the hearing was not adopted and that the ALJ "failed to provide a basis logically connected to the evidence" in support of a 15% off-task limitation in her RFC. (Pl. Mem. at 15.) She also argues that this lack of evidence indicates that the limitation was changed to prevent a finding of disability. Ms. J also states that the Appeals Council erred by rejecting her late-submitted evidence that contradicted the ALJ's finding. (*Id.* at 17-21.)

The Commissioner responds that Ms. J failed to identify underlying medical evidence to support a greater RFC limitation. The Commissioner further argues that substantial evidence supports the 15% off-task limitation, citing the VE's testimony that the identified jobs have an off-task tolerance "right up to that 20 percent." (Def. Mem. at 9.) The Commissioner argues that it was immaterial that the ALJ included a 10% off-task limitation "because any limitation up to 20% would not be work-preclusive." (*Id.*) The Commissioner also states that the evidence Ms. J submitted to the Appeals Council does not affect whether substantial evidence supports the ALJ's decision. (*Id.* at 11-17.)

A claimant's RFC is the "most [she] can do despite [her] limitations, including both physical and mental limitations." *LeeAnthony C. v. Berryhill*, Case no. 18-cv-77 (NEB/TNL), 2019 WL 2343732, at *3 (D. Minn. May 13, 2019) (citing 20 C.F.R. § 416.945). An ALJ's determination of a claimant's RFC "must be based on all of the

relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Id.* (cleaned up). "The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Ackerman v. Kihakazi*, Case no. 4:21-cv-814 PLC, 2023 WL 2496839, at *4 (E.D. Mo. March. 14, 2023) (quoting *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007)) (cleaned up). An ALJ's assessment of a claimant's RFC is a medical question and therefore "must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)).

Social Security Ruling ("SSR") 96-8p sets forth policies and policy interpretations regarding the RFC assessment for the Social Security Administration. According to SSR 96-8p, the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities)." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). There is no requirement, however, that an ALJ follow each RFC limitation with a list of supporting evidence. *See, e.g.*, *Wilfong v. Berryhill*, Case no. 4:17-cv-2747-SNLJ, 2018 WL 4489453, at *4 (E.D. Mo. Sept. 19, 2018). "Moreover, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (cleaned up). Furthermore, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 936, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v.*

*Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)). Instead, the RFC should be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Id.* (quoting *Myers*, 721 F.3d at 527) (cleaned up).

Courts in this district and elsewhere have used the term "logical bridge" when reviewing an ALJ's decision. *See, e.g.*, *Bobby S.W. v. Dudek*, Case no. 24-vc-3047 (DJF), 2025 WL 607099, at *3 (D. Minn. Feb. 25, 2025) ("At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates."); *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("The ALJ . . . must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. If the evidence does not support the conclusion, we cannot uphold the decision.") (citations omitted). Whether this "logical bridge" requirement is any different from the requirements of SSR 96-8 is unclear, but an ALJ must nonetheless provide a reasoned explanation for her determination.

The Court agrees with Ms. J that the ALJ's RFC determination is not supported by substantial evidence. The ALJ instructed the VE to evaluate a hypothetical person who "would be off task at least 20 percent of the workday." (R. 1013.) The VE testified that an individual off-task more than 20 percent of the workday would be incapable of maintaining competitive employment and that the "tolerance for being off task" is "right up to that 20 percent" for the jobs he identified. (*See* R. 1013-14.) Given this testimony and Ms. J's unrebutted testimony of multiple 20-60 minute periods of inactivity due to her vision (R.

9

1007), she argues that the ALJ failed to provide a logical basis for a 15 percent off-duty limitation rather than a 20 percent off-duty limitation.

The Commissioner first responds that Ms. J failed to provide underlying medical evidence supporting a greater RFC limitation. (Def. Mem. at 8.) But the ALJ's decision cites to medical records of visual symptoms over the course of the relevant period. (*See* R. 974-76; 1364, 1355, 1365, 1356, 1351, 1305, 1872, 2048 ("visual obscurations" that "tend to last from anywhere from 20-60 minutes 4-8 times per day").) The Commissioner also responds that the ALJ's off-task limitation of 15 percent of the time was supported by substantial evidence because the VE testified that the off-task tolerance for the jobs he identified was "right up to that 20 percent." (R. 1014.) But the issue is not whether someone with a 15 percent off-duty limitation could maintain employment—it is whether substantial evidence supports a 15 percent off-duty limitation for Ms. J rather than a 20 percent off-duty limitation. The ALJ failed to build a logical bridge between the evidence of Ms. J's symptoms and the decision to reduce the off-duty limitation from 20 percent to 15 percent. There is no requirement that an ALJ list specific supporting evidence for each RFC limitation, but the ALJ should, at a minimum, provide a logical bridge between the evidence and the RFC to provide for meaningful judicial review.

Furthermore, the ALJ's post-hearing alteration removed limitations that the VE testified would preclude Ms. J from employment. At the administrative hearing, the ALJ posed a hypothetical to the VE—a set of limitations that the ALJ likely believed to be supported by substantial evidence in the record—that contained a 20 percent off-duty limitation. After the VE testified that anything more than 20 percent off-duty would

10

preclude employment, the ALJ elicited further testimony that less than 20 percent would not preclude employment. In her decision, the ALJ adopted a lower off-duty limitation that did not preclude employment but failed to provide any reasoning to discard the posed hypothetical limitation and adopt the lesser limitation. Reducing limitations to the point that benefits can be denied is not neutrally developing the record.[3] It is possible that the ALJ has a logical reason other than the denial of benefits. Unfortunately, the decision does not provide one. The ALJ's failure to provide a logical explanation for the changed limitation warrants remand.

Ms. J also challenges the Appeals Council's decision not to evaluate additional evidence. (Pl. Mem. at 17-21; Pl. Reply at 7-9.) Because this matter is being remanded, the Court need not address this argument.

## II.     ALJ's Failure to Address Listing 5.08 Was Error

Finally, Ms. J argues that the ALJ's failure to evaluate whether she satisfied Listing 5.08 due to her low body mass index ("BMI") is legal error warranting remand. (Pl. Mem. at 21-25.) The Commissioner argues there was no error in failing to evaluate whether Ms. J met Listing 5.08 because Ms. J "has not pointed to evidence demonstrating that she would satisfy each of the requirements of this Listing." (Def. Mem. at 18.)

As the claimant, Ms. J has the burden of proving that her impairment meets or equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an

---

[3] "The ALJ has no interest in denying benefits and must act neutrally in developing the record." *Snead v. Barnhart*, 630 F.3d 834, 838 (8th Cir. 2004).

impairment must meet all of the listing's specified criteria." *Id.* Courts require ALJs to sufficiently articulate their assessment of the record to assure the court that they considered the important evidence and to enable the court to "trace the path of their reasoning." *Kavadius v. Barnhart*, 306 F. Supp. 2d 804, 812 (N.D. Ill. 2005) (citing *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b); *Zebley*, 493 U.S. at 531 ("a claimant . . . must present medical findings equal in severity to *all* the criteria for one most similar listed impairment").

Generally, an ALJ's failure to adequately explain her factual findings is "not a sufficient reason for setting aside an administrative finding" where the record supports the overall determination. *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999). But the Eighth Circuit has held that remand is appropriate where the ALJ's factual findings are insufficient to allow for meaningful appellate review. *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's decision failing to reference the applicable Listing was insufficient for meaningful appellate review); *see also Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (noting that Eighth Circuit "ha[s] held that a remand is appropriate where the ALJ's factual findings, considered in the light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision").

In determining whether Ms. J's impairments met or medically equaled a listed impairment, the ALJ did not refer to listing 5.08. (*See* R. 968-71.) Listing 5.08 requires a demonstration of the following: "weight loss due to any digestive disorder, despite

12

continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 12-month period." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.08. The record shows that evidence could support this finding. Ms. J was treated for chronic diarrhea and bowel lesions during the relevant period. (R. 1340-41, 227-28.) The record also demonstrates multiple documented BMI findings less than 17.50. (R. 1415, 1377, 1369, 1344, 1341, 1316, 2012, 1965.) This medical evidence could be sufficient to support a finding that her impairments meet or medically equal Listing 5.08.

The Commissioner argues that Ms. J failed to demonstrate that she has a gastrointestinal disorder causing weight loss despite adhering to treatment. The Commissioner also argues that this Court should "decline [Ms. J's] invitation to reweigh the evidence." (Def. Mem. at 19.) But this misses the mark. It is the ALJ's job in the first instance to properly apply the regulations and the accompanying rulings to determine whether a plaintiff's impairments meet or medically equal a listed impairment, and it is unclear whether the ALJ even considered whether Ms. J's impairments meet or medically equal the requirements for Listing 5.08. Accordingly, remand is required. *See Chunn*, 397 F.3d at 672.

## **CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Ms. J's Motion for Summary Judgment (Dkt. 17) is **STRICKEN as filed in error;**

13

2. Ms. J's request for relief (Dkt. 18) is **GRANTED**;

3. The Commissioner's request for relief (Dkt. 20) is **DENIED**; and

4. This matter is **REMANDED** for further proceedings consistent with this order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 30, 2025

                                             *s/Shannon G. Elkins*
                                             SHANNON G. ELKINS
                                             United States Magistrate Judge